THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Leon Modrowski,<br><br>                                  Plaintiff,<br><br>vs.<br><br>John Pigatto, individually; Frank Pigatto, individually; TAQ Properties, LLC; and Capps Management.<br><br>                                Defendants. | No. 09-C-7002<br><br>Judge Ronald A. Guzmán |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Leon Modrowski, opposes defendants' Motion for Summary Judgment, as follows:

**I.    Statement of Facts**

Plaintiff, Leon Modrowski, was a property manager for defendants, who owned several multi-unit residential buildings. (Amended Complaint, ¶¶ 6-8.) In 2008, defendants' began to pressure Mr. Modrowski to skimp on important building repairs, and to not pay the proper interest rate on tenant security deposits. (Amend. Compl. at ¶16.) Mr. Modrowski refused to engage in this unlawful behavior, which in part implicated tenant safety issues. (Amend. Compl. at ¶ 17). For this refusal, Mr. Modrowski was fired. (Amend. Compl. at ¶17.) Mr. Modrowski believed he was owed unpaid wages, and after defendants refused to pay him, Mr. Modrowski filed a lien

1

against the properties pursuant to the Illinois Commercial Brokers Lien Act. (Amend. Compl. at ¶¶ 19-20.)

Defendants demanded that Mr. Modrowski withdraw the liens, and threatened him with an unspecified arrest if he did not comply. (Amend. Compl. at ¶¶ 22-23.) Mr. Modrowski did not withdraw the liens, and was promptly arrested by the Hickory Hills Police for the alleged theft of a money order eight months prior. (Amend. Compl. at ¶¶ 25-27.)  Defendants knew at the time of the arrest that the money order was tendered to Mr. Modrowski to repay money loaned to the tenant by Mr. Modrowski. (Amend. Compl. at ¶ 27.)

Eventually the misdemeanor theft charge was dismissed because the evidence showed that Mr. Modrowski did not convert the money order. (Amend. Compl. at ¶ 30.) The liens Mr. Modrowski had put on defendants' property were in foreclosure, due to defendants' demand that the liens be enforced. (Amend. Compl. at ¶ 28-29.)  One day, just as the criminal case was fading and the foreclosure case was heating up, Mr. Modrowski found that he could not log into his personal email account one day. (Amend. Compl. at ¶¶ 31-32.)

Mr. Modrowski called AT&T, which informed him that defendants had changed the password to Mr. Modrowski's personal email account. (Amend. Compl. at ¶33.) Defendants were able to do this because back when Mr. Modrowski worked for defendants, he had set up his work email and personal email accounts to be tied together with the same password. (Amend. Compl. at ¶¶ 33-36.) After Mr. Modrowski was fired he abandoned the work account, but maintained his personal account,

forgetting that the accounts were somewhat merged. (Amend. Compl. at ¶¶ 34-36.) Mr. Modrowski's personal account contained years of personal, business, legal, medical, and family communications. (Amend. Compl. at ¶¶38-40.) Defendants now had access to all of the communications between Mr. Modrowski and his attorneys regarding litigation between Mr. Modrowski and defendants. (Amend. Compl. at ¶¶ 38-40.)

According to AT&T, defendants had to authorize a separation of the accounts. (Amend. Compl. at ¶ 37.) Both AT&T and Mr. Modrowski's counsel reached out to defendants—before filing this litigation—to ask that defendants authorize AT&T to unmerge the accounts. (Amend. Compl. at ¶¶ 45-51.) Defendants refused. (Amend. Compl. at ¶¶ 50-51.) After this litigation was filed, and this court ordered defendants to authorize the unmerging of the accounts, it was revealed that defendants had deleted nearly all of the contents of Mr. Modrowski's personal email account. (Amend. Compl. at ¶ 58.)

## II.    Argument

Defendants' motion for summary judgment must be denied for two reasons. First, since the motion does not contain a Local Rule 56.1 Statement, cite to any admissible evidence, or cite to any supporting authority for the substantive law of the case, defendants have not met their initial burden of production. Second, defendants' sole reliance upon the amended complaint renders this a motion to dismiss, not a motion for summary judgment. Since Mr. Modrowski has clearly stated claims upon which relief can be granted, a motion to dismiss must be denied.

> **A. Defendants do not meet their initial burden of demonstrating that genuine issues of material fact do not exist, and the court need not**

**reach plaintiff's response to deny defendants' motion for summary judgment.**

Summary judgment is proper where the movant shows that there is no genuine issue of material fact, such that as a matter of law judgment must be entered for the movant. Fed. R. Civ. Pro. 56(c). The movant bears the initial burden of showing that no genuine issue of material fact exists. Newman v. Deer Path Inn, 1999 U.S. Dist. LEXIS 19040, *14 (N.D. Ill., Dec. 3, 1999). The court must consider whether a movant has, in fact, met its initial burden, even when the non-movant fails to respond to a summary judgment motion and the movant's facts are deemed admitted. See Rivera v. Ty, Inc., 2009 U.S. Dist. LEXIS 118108, *3 (N.D. Ill., Dec. 18, 2009).

In the Northern District of Illinois, a party moving for summary judgment "shall serve and file" three items: "(1) any affidavits and other materials referred to in Fed. R. Civ. P. 56(e); (2) a supporting memorandum of law; and (3) a statement of material facts." Local Rule 56.1(a). The rule further defines the third item on that list as "consist[ing] of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Id.

The local rules are not mere technicalities and are strictly enforced by the Seventh Circuit. See e.g., F.T.C. v. Bay Area Business Council, Inc., 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."). A movant who ignores the Local Rules fails to meet its initial burden, and plaintiff's response should be

4

stricken as moot. See Central States, Southeast and Southwest Areas Pension Fund v. LaCasse , 254 F. Supp. 2d 1069, 1072 (N.D. Ill. 2003); see also, Gecht v. Sayles, 2005 U.S.Dist. LEXIS 39786, *30, n. 2 (N.D.Ill., Nov. 4, 2005) (where movant fails to produce all relevant evidence, it fails to meet its initial burden, thereby eliminating the need for the court to review non-movant's response to summary judgment motion).

Defendants have not complied with either the Federal or Local Rules of Civil Procedure in two ways. First, defendants have not filed a supporting memorandum of law. Second, defendants have not filed a Local Rule 56.1 Statement or provided supporting admissible evidence.

### 1. Defendants' "memorandum of law" does not cite any authority regarding the plaintiff's claims, and is therefore not a "supporting memorandum" under the Local Rules.

Motions which do not contain any citations to relevant authority are "impermissible" in this jurisdiction, because "it is not a court's responsibility to research and support a party's arguments." Hodgdon v. Northwestern Univ., 245 F.R.D. 337, 340, n. 3 (N.D. Ill. 2007) (citations omitted). In Bolden v. Frank, the court denied summary judgment where the movant did not address any of the substantive claims, and instead relied upon procedural arguments. Bolden v. Frank, 1991 U.S. Dist LEXIS 15728 (N.D. Ill., Oct. 30, 1991). In LaMaire v. La. Dept. of Transp. , the Fifth Circuit overturned a district court decision granting summary judgment where the movant "failed to cite any legal precedent or standards regarding [the claims]." LaMaire v. La. Dept. of Transp., 480 F. 3d. 383, 388 (5th Cir. 2007).

In both Bolden and LaMaire the courts denied summary judgment because their respective movants' efforts were too minimal to meet their "initial burden." Bolden at **

5

10-11; LaMaire at 388. So too should be the result in this case. Defendants do not mention a single element of a single claim in Mr. Modrowski's amended complaint, and correspondingly, defendants cite no case law to further any arguments in support of summary judgment. Moreover, defendants do not explain why they believe the court need not reach any of the elements of any of the claims to grant summary judgment.

### 2. Defendants did not file a Local Rule 56.1 Statement or put forth any supporting admissible evidence.

The movant has the initial burden of demonstrating the absence of a genuine issue of material fact by pointing to a specific citation of fact in the record. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In this jurisdiction, Local Rule 56.1 dictates the format for presenting and organizing these factual citations. Local Rule 56.1 (a)(3). Rule 56.1 Statements of Fact serve as "road maps" to courts deciding motions for summary judgment. Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 (7th Cir. 1994). They assist the court by pointing to "the specific undisputed evidence in the record that supports the party's position." Ogdon v. Hoyt, 409 F. Supp. 2d 982, 986 (N.D. Ill. 2006) (citing Ford v. Lubermens Mut. Co., 197 F.R.D. 365, 366 (N.D.Ill. 2000)). See also U.S. Neurosurgical, Inc. v. City of Chicago, 2006 U.S. Dist. LEXIS 97659, at **10-11 (N.D. Ill. Mar. 21, 2006). Rule 56.1 Statements are not optional. Local Rule 56.1(a)("the moving party shall serve and file…") (emphasis added).

Defendants did not file a Local Rule 56.1 Statement, either as a part of their motion or as a separate pleading. Instead, within the text of defendants' memorandum of law, defendants provide fourteen paragraphs, of which only half have citations. See Duchossois Indus., Inc. v. Crawford & Co., 2001 U.S. Dist. LEXIS 444, 2001 WL 59031, at

6

*1 (N.D.Ill. Jan. 19, 2001) (distinguishing L.R. 56.1 statements from statement of facts section of a memorandum of law). Defendants' failure to comply with Local Rule 56.1 nullifies their motion.

In Central States, Southeast and Southwest Areas Pension Fund v. LaCasse, the movant's lack of a 56.1 statement rendered the motion "skeletal" and not enough for the movant to "carry its burden." Central States, Southeast and Southwest Areas Pension Fund v. LaCasse, 254 F. Supp. 2d 1069, 1072 (N.D. Ill. 2003). Defendants' motion in the present case is similarly skeletal, owing to the absence of a Rule 56.1 Statement.

Were the court to be generous and construe defendants' "statement of facts" as a weak Rule 56.1 Statement, defendants are still not in compliance with Rule 56.1 because they have not cited any admissible evidence in support of their motion. Defendants cite only to the amended complaint, and pleadings are not evidence. Burrell v. City of Matoon, 378 F. 3d 642, 649 (7th Cir. 2004). In Gordon v. Vitalis Partners LLC, Judge Kocoras denied summary judgment where the movant cited only to the complaint and a letter in its summary judgment motion. The court held that the movant had not complied with Local Rule 56.1 when it cited to the complaint, which is "not evidence," and to the letter, which is "inadmissible hearsay." Gordon v. Vitalis Partners LLC, 2009 U.S. Dist. LEXIS 56057 (N.D. Ill., July 9, 2009) (citations omitted).

Defendants in the present case have relied entirely upon the amended complaint, resulting in a summary judgment motion that by definition does not have a single undisputed material fact put forth to support the motion, because none of defendants' citations constitute evidence. See Malec v. Sanford, 191 F.R.D. 581, 583 (N.D. Ill. 2000)

Case: 1:09-cv-07002 Document #: 42 Filed: 09/21/10 Page 8 of 18 PageID #:136

("factual allegations not properly supported by citation to the record are nullities."); see also, Ogborn v. United Food & Commercial Workers, Local No. 881, 2000 U.S. Dist. LEXIS 14092, 2000 WL 1409855, at *3 (N.D.Ill. Sep. 25, 2000) ("[T]o the extent any factual assertion has been inadequately or improperly supported, such assertions will not be incorporated into the facts taken to be true for purposes of [summary judgment].").

This court cannot possibly grant—and need not read plaintiff's response to—a summary judgment motion that does not have a Rule 56.1 Statement, does not have any supporting admissible evidence, and does not cite any authority. Defendants have violated the Local Rules every way possible. The court is urged to deny defendants' motion.

> **B. To the extent defendants have put forth a motion to dismiss under Federal Rule 12(b)(6), defendants' motion must be denied because plaintiff has stated a claim upon which relief can be granted.**

Defendants' motion for summary judgment suffers a second fatal flaw that warrants denial of its motion: the motion is not a motion for summary judgment. Rather, a motion for summary judgment that relies only upon the pleadings is a motion to dismiss, because allegations are not evidence and evidence is required for a motion for summary judgment under Federal Rule 56. Zavacki v. Arthur Schumann Midwest LLC, 2010 U.S. Dist. LEXIS 88648, **2-3 (N.D. Ill., Aug. 27, 2010).

Federal complaints must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." McDonald v. Household Internat'l. Inc., 425 F. 3d 424, 427 (7th Cir. 2005) (quoting Fed. R. Civ. Pro. 8(a)). A plaintiff need not articulate all legal theories or enumerate every element of a claim. Powell v. Fujimoto, 119 Fed. Appx. 803, 806 (7th Cir. 2004).

8

A motion to dismiss under Federal Rule 12(b)(6) must be granted where relief is not possible "under any set of facts that could be established as consistent with the allegations." Bartholet v. Reishauser A.G., 953 F. 2d 1073, 1078 (7th Cir. 1992). When evaluating a motion to dismiss, all well-pleaded allegations are taken to be true, and all inferences are drawn in favor of the non-movant. McDonald at 425. Ambiguity in the complaint is not enough, on its own, to warrant dismissal of the claim. Vakharia v. Little Comp. of Mary Hosp., 917 F. Supp. 1282, 1293 (N.D. Ill. 1996).

### 1. Count II: Computer Fraud and Abuse Act, 18 U.S.C. § 1030

Mr. Modrowski's Computer Fraud and Abuse Act ("CFAA") cause of action arises under three sections of the statute. Under § 1030(a)(2)(A), Mr. Modrowski's cause of action arises from defendants' unauthorized access to his personal email account which included financial statements and records from at least two financial institutions with whom Mr. Modrowski has personal banking accounts. Under § 1030(a)(2)(C), Mr. Modrowski's cause of action arises from defendants' unauthorized access to Mr. Modrowski's personal email stored on AT&T and Yahoo servers. And finally, under § 1030(a)(5)(C), Mr. Modrowski's cause of action arises from defendants' unauthorized access to Mr. Modrowski's personal email account and their subsequent deletion of nearly all of the contents of that account.

To survive a motion to dismiss under all CFAA causes of action, Mr. Modrowski must state facts that defendants (1) intentionally, and (2) without authorization, accessed a (3) protected computer, and that (4) plaintiff suffered at least $5,000.00 in actual damages within a one year period. 18 U.S.C. §§ 1030(a)(2)(A), 1030(a)(2)(C), 1030(a)(5)(C), 1030(g). Mr. Modrowski has adequately pled each of these elements.

Mr. Modrowski pled hat defendants were contacted by both AT&T and by his attorney to tell defendants that they had severed Mr. Modrowski's access to his personal email account, and to demand they release his emails and return Mr. Modrowski's access to his personal account. (Amend. Compl. at ¶¶ 44-47.) Mr. Modrowski further pled that defendants refused to relinquish control of Mr. Modrowski's personal email account and its contents. (Amend. Compl. at ¶ 51) These allegations, when taken as true for the purposes of a motion to dismiss, clearly satisfy the "intentional" components of the CFAA. With regard to the "unauthorized" prong, Mr. Modrowski properly pled that he did not give defendant permission to access his email account, and that at no time did he give defendants the passwords to his personal account. (Amend. Compl. at ¶¶ 9-15); see Bloomington-Normal Seating Co. v. Albritton, 2009 U.S. Dist. Lexis 40302, *11 (C.D. Ill. 2009) (plaintiff did not authorize access to its computers); see also Steinbech v. Village of Forest Park, 2009 U.S. Dist. Lexis 59907 (N.D. Ill., July 14, 2009) (defendants were not authorized to view and forward plaintiff's personal email, even where plaintiff had given defendant her passwords so that defendant's IT personnel could configure part of her account).

Mr. Modrowski alleged that defendants accessed his personal email account through the internet. (Amend. Compl. at ¶ 12.) This satisfies the "protected computer" element of Mr. Modrowski's CFAA claims. See Patterson Custom Homes v. Bach, 586 F. Supp. 2d 1022, 1032-1033 (N.D. Ill. 2008) (citations omitted).

And finally, Mr. Modrowski properly pled that he suffered in excess of $5,000.00 in actual damages. In paragraph 71 of his amended complaint, Mr. Modrowski

10

enumerates seven causes of actual damages, totaling more than $5,000.00. (Amend. Compl. at ¶71.) This detailed description of the "grounds" upon which Mr. Modrowski's claims for damages is sufficient to survive a motion to dismiss. See Patterson Custom Homes at 1036-1037 (relying upon Bell Atl. Corp. v. Twombley, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), to hold that plaintiff adequately pled damages incurred responding to the loss suffered due to defendants' violation of the CFAA).

### 2. Count IV: Illinois Whistleblower Act 740 ILCS 174/20

The Illinois Whistleblower Act prohibits an employer from retaliating against an employee for "refusing to participate in an activity that would result in a violation of State or federal law, rule or regulation." 740 ILCS 174/20. In paragraph 16 of his amended complaint, Mr. Modrowski alleged that "in the spring of 2008, defendants began pressuring Mr. Modrowski to forgo licensing and occupancy ordinance requirements, thereby eliminating critical repairs to save money, and to refund tenants their security deposits at an escrow interest rate that was in violation of local ordinances." (Amend. Compl. at ¶ 16.) In the following paragraph, Mr. Modrowski alleged that he "refused to violate licensing and occupancy safety and escrow laws, and on April 5, 2009 he was fired." (Id. at ¶ 17.)

Mr. Modrowski's allegation that he refused to participate in illegal activities, and was retaliated against for this refusal, adequately states a claim for the purposes of a motion to dismiss under Federal Rule 12(b)(6). See Washington v. Ass'n for Individual Dev., 2009 U.S. Dist. LEXIS 101591, **9-10 (N.D. Ill., Oct. 29, 2009) (plaintiff's Illinois

11

Whistleblower Act claim is dismissed where there is no allegation that plaintiff refused to participate in illegal activities).

### 3. Count V: Intrusion Upon Seclusion

To survive a motion to dismiss a claim based upon the Illinois tort of intrusion upon seclusion, a plaintiff must allege facts that if true would show (1) defendant committed an unauthorized prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive to the reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiff to suffer. Steinbech v. Village of Forest Park, 2009 U.S. Dist. Lexis 59907 (N.D. Ill., July 14, 2009) (citing Busse v. Motorola, Inc., 351 Ill. App. 3d 67 (1st Dist. 2004).[1]

Mr. Modrowski properly pled specific facts which go to each of the elements list above. (Amend. Compl. at ¶85 (unauthorized access into private email), ¶ 88 (offensive to reasonable person), ¶ 86 (the email account accessed by defendants contained private financial, medical, family, and attorney-client communications), ¶ 89 (plaintiff suffered financial, physical, and emotional damages)); see Steinbach at "Count 8—Intrusion Upon Seclusion" section (plaintiff properly alleges facts in accordance with these elements similarly to the case at bar). Mr. Modrowski easily survives a motion to dismiss on Count V.

### 4. Count VI: Retaliatory Discharge

---

[11] This decision as it is reported on Lexis Nexis is without pagination after page *6, and therefore cannot be cited specifically. The portion cited to in this citation appears in the decision under the heading "Count 8—Intrustion Upon Seclusion," approximately half-way through the decision.

Mr. Modrowski also alleges that defendants committed the tort of Illinois common law retaliatory discharge by firing him, having him arrested, and hijacking, and then destroying, the contents of his personal email account. To state a claim of retaliatory discharge, a plaintiff must show that (1) plaintiff was fired, (2) in retaliation for the plaintiff's conduct, and (3) a clear mandate of public policy was violated by the termination. Thakkar v. Station Operators, Inc., 697 F. Supp. 2d 908, 929 (N.D. Ill. 2010).

In the case at bar, the parties agree that Mr. Modrowski was fired, thereby satisfying the first element. (Def. Memo., ¶5.) As to the second and third elements, Mr. Modrowski alleges that he was fired for opposing, and refusing to participate in, financial improprieties and violations of tenant safety ordinances. (Amend. Compl. at ¶¶ 92-94.)

Plaintiff could not find any cases that explicitly hold that employees who are fired for protesting or refusing to engage in practices that violate tenant safety state a claim for retaliatory discharge. Yet, it is clear that the term, "tenant safety," is not specific enough to survive a motion to dismiss. See Turner v. Mem'l Med. Ctr., 233 Ill. 2d 494, 502-504 (Ill. 2009) (using the term "patient safety," without more, is not enough to trigger a cause of action for retaliatory discharge).

In the case at bar, Mr. Modrowski alleged that "defendants began pressuring Mr. Modrowski to forgo licensing and occupancy ordinance requirements, thereby eliminating critical repairs," and he refused. (Amend. Compl. at ¶¶ 16-17.) Mr. Modrowski further alleged that his refusals were a rejection of mandates that would

13

"put tenant safety at risk."( Id. at ¶ 94.) The question for this court is whether Mr. Modrowski's allegations implicate any clear mandates of public policy in Illinois.

Illinois courts look to the state's constitution, statutes, judicial decisions, and federal law to see if any of these sources "enunciate a public policy that plainly covers the situation to which plaintiff objects." Carty v. Suter, 371 Ill. App. 3d 784, 787-788 (Ill. App. 2d Dist. 2007) (internal citations omitted) (quoting Stebbings v. Univ. of Chicago, 312 Ill. App. 3d 360, 367 (Ill. App. 2000)). The question "is not whether the cited provisions apply…or even whether plaintiff pleaded sufficient facts establishing whether plaintiff violated the provisions." Carty at 789.

This state declared tenant safety a matter of public policy nearly 50 years ago in the Illinois Retaliatory Eviction Act ("Eviction Act"). 765 ILCS 720/1 (1963). The Eviction Act states that it is "against the public policy of the State" for a landlord to evict, or refuse to renew the lease of, a tenant who has complained to a governmental entity about a "violation of building code, health ordinance or similar regulation." 765 ILCS 720/1. This is just the type of enunciation of public policy that Illinois courts are looking for when assessing a retaliatory discharge claim.

Therefore, per the analysis in Carty v. Suter, Mr. Modrowski has adequately pled that his termination—which was caused by his refusal to endanger tenant safety by forgoing building repairs—violated a clearly mandated public policy. Mr. Modrowski has stated a claim of retaliatory discharge, upon which relief can be granted.

### 5. Count VII: Malicious Prosecution

To establish a claim of malicious prosecution under Illinois law, a plaintiff must show that (1) defendants initiated a criminal or civil proceeding, (2) the proceeding was

14

terminated in his favor, (3) there was no probable cause, (4) defendants acted with malice, and (5) plaintiff suffered damages. Swearnigen-El v. Cook Co. Sheriff's Dept., 602 F. 3d 852, 863 (7th Cir. 2010).

Mr. Modrowski satisfies the first element by alleging that defendants had him arrested. (Amend. Compl. at ¶¶ 22-26.) The second element is satisfied in paragraph 30 of the Amended Complaint, in which Mr. Modrowski alleges that the charges were dropped because it was determined that Mr. Modrowski did not commit theft. (Id. at ¶ 30.)

As to the third element, probable cause is "a state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged." Mosley v. City of Chicago, 2010 U.S. App. LEXIS 15616, 19-20 (7th Cir. July 29, 2010) (quoting Reynolds v. Menard, Inc., 365 Ill. App. 3d 812, 850 N.E.2d 831, 837, 303 Ill. Dec. 26 (Ill. App. Ct. 2006)). Mr. Modrowski alleges facts that, when taken as true for the purposes of a motion to dismiss, establish that the defendants had direct knowledge at the time they had Mr. Modrowski arrested that he was the rightful owner of the money order. (Amend. Compl. at ¶ 27.) It is only logical that if defendants knew the money order belonged to Mr. Modrowski, they could not have had an "honest and strong suspicion" that Mr. Modrowski stole the money order. Mr. Modrowski satisfies the third element.

The fourth element is satisfied by Mr. Modrowski's allegations that defendants threatened him with an unspecified arrest if Mr. Modrowski did not drop the liens he had put on defendants' property for unpaid wages, and that defendants hated him.

15

(Amend. Compl. at ¶¶ 21-25, 27, 99.) Mr. Modrowski need not prove personal "ill-will" on the part of defendants, to show malice, but he does satisfy this element by showing "improper motive" in triggering the arrest. Turner v. Chicago, 91 Ill. App. 3d 931, 937 (Ill. App. 1st Dist. 1980). Surely, having Mr. Modrowski arrested because he refuses to drop civil proceedings is "improper motive."

Mr. Modrowski satisfies the fifth element by alleging he lost employment opportunities, wages, and suffered emotional distress as a result of his arrest. (Amend. Compl. at ¶ 100.) Mr. Modrowski has successfully stated a claim of malicious prosecution.

### 6. Count VIII: Intentional Infliction of Emotional Distress

To state a claim of intentional infliction of emotional distress, Mr. Modrowski must allege facts that show that (1) defendants' conduct was truly extreme and outrageous, (2) defendants either intended to inflict emotional distress or knew there was at least a high probability that they would cause severe emotional distress and (3) the conduct in fact caused severe emotional distress. Stokes v. Bd. of Educ., 599 F.3d 617, 626 (7th Cir. 2010) (citations omitted). To satisfy the first element, defendants' conduct must be "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." Id. at 626 (quoting Feltmeier v. Feltmeier, 207 Ill. 2d 263, 798 N.E.2d 75, 83 (Ill. 2003)).

Mr. Modrowski alleges that defendants fired him when he refused to skimp on building repairs, had him arrested for theft of a money order defendants' knew had Mr. Modrowski's name on it and was intended for him, commandeered Mr. Modrowski's personal email account, refused to relinquish control over the email account when

16

confronted by AT&T and Mr. Modrowski's attorney, and finally, deleted most of the contents of the email account before restoring Mr. Modrowski's access to his email. Surely, a jury could find that this sustained attack upon Mr. Modrowski –which resulted in an arrest record and the total loss of years of email communications--was extreme and outrageous.

As to the second element, Mr. Modrowski satisfies the plain language of this element by alleging actions taken against him by defendants—having Mr. Modrowski arrested, destroying Mr. Modrowski's personal email account and all its contents—that can only be explained by an intent to cause Mr. Modrowski emotional distress. The third element is satisfied by paragraph 106 of Mr. Modrowski's amended complaint, in which Mr. Modrowski states that he suffered "tremendous emotional distress as a result of defendants' actions." (Amend. Compl. at ¶106.)

### III. Conclusion

This court is urged to deny defendants' motion for summary judgment because defendants have not complied with the Local Rules, and have therefore not met their initial burden to show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Defendants' motion must also be denied because it is not a motion for summary judgment, it is a motion to dismiss, and as was shown above, Mr. Modrowski has clearly stated a claim upon which relief can be granted.

Respectfully submitted,
Plaintiff,
Leon Modrowski,

By:<u>        /s/ Lisa M. Stauff</u>
　　　　　　　　　Plaintiff's attorney

Lisa M. Stauff
Law Offices of Lisa M. Stauff
53 W. Jackson Blvd., Suite 505
Chicago, Illinois 60604
(312) 212-1036
LStauff@StauffLaw.com

CERTIFICATE OF SERVICE

I, Lisa M. Stauff, an attorney, certify that on September 21, 2010, I served the attached document via the court's CM/ECF system, upon all parties of record.

By:<u>        /s/ Lisa M. Stauff</u>
　　　　　　　　　Plaintiff's attorney

Lisa M. Stauff
Law Offices of Lisa M. Stauff
53 W. Jackson Blvd., Suite 505
Chicago, Illinois 60604
(312) 212-1036
LStauff@StauffLaw.com